UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KEITH L. CLEMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:09-cv-0348-SEB-DML |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Keith L. Clemons ("Clemons") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Clemons filed applications for SSI and DIB on November 25, 2003, alleging an onset date of disability of September 20, 2002. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted but he failed to appear at a hearing held on March 6, 2006. His claims were dismissed. The Appeals Council remanded the case for another hearing. A hearing was conducted on September 10, 2007. Clemons appeared, accompanied by his attorney. Medical and other records were introduced into evidence. Clemons, his wife, a medical expert, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on July 21, 2008. On January 27, 2009, the Appeals Council denied Clemons' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Clemons met the insured status requirements of the Act through December 31, 2007; (2) Clemons had not engaged in substantial gainful activity since September 20, 2002, the alleged onset date; (3) Clemons had severe impairments consisting of the residual effects of a right leg fracture, the residual effects of a back injury, hepatitis C with a generalized masculopapular rash, non-insulin-dependent diabetes mellitus, major depression and polysubstance abuse; (4) Clemons' impairments, including the substance use disorders, met Listings 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) if Clemons stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, he would continue to have a severe impairment or combination of impairments; (6) if Clemons stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (7) if Clemons stopped the substance use, he would have the residual functional capacity ("RFC") to perform a range of work defined as follows: lifting ten pounds frequently and twenty pounds occasionally; carrying ten pounds frequently; sitting six hours at one time and six hours during an eight-hour workday; standing one hour at one time and two hours during an eight-hour workday; walking one hour at one time and one hour during an eight-hour workday; frequent handling and feeling; occasional balancing, stooping, reaching, pushing and pulling; and no climbing, crouching, kneeling or crawling; in addition, he would have a good ability (ability to function in this area is more than satisfactory) to understand, remember and carry out simple job instructions; further, he would have a fair ability (ability to function in this area is limited but satisfactory) to: follow work rules, relate to coworkers, use judgment; deal with work stress; function independently; maintain attention and concentration; understand, remember and carry out detailed, but not complex job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; and he would have a poor ability (ability to function in this area is seriously limited but not precluded) to deal with the public; interact with supervisors; and understand, remember and carry out complex job instructions; (8) if Clemons stopped the substance use, he would be unable to perform any of his past relevant work; (9) Clemons was born on December 21, 1958, was forty-three years old on his alleged disability onset date and was forty-nine years old on the date of the ALJ's decision, both defined as a younger individual; (10) Clemons had a limited education and was able to communicate in English; (11) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Clemons was "not disabled," whether or not he had transferable job skills; (12) if Clemons stopped the substance use, considering his age, education, work experience and RFC, there would be a significant number of jobs in the national economy he could perform; and (13) because Clemons would not be disabled if he stopped the substance use, his substance use disorder was a contributing factor material to the determination of disability, and therefore, he had not been disabled within the meaning of the Act at any time from the alleged onset date through the date of the ALJ's decision. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Clemons had not been under a "disability" as defined in the Act based on his applications filed on November 25, 2003.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Clemons had severe impairments consisting of the residual effects of a right leg fracture, the residual effects of a back injury, hepatitis C with a generalized masculopapular rash, non-insulin-dependent diabetes mellitus, major depression and polysubstance abuse. The ALJ further determined that Clemons' impairments, including substance use disorders, met Listings 12.04 and 12.09, but that if

3

he stopped the substance use, he would have the RFC to perform a significant number of unskilled, sedentary jobs. Because Clemons would not be disabled if he stopped the substance use, his substance use disorder was a contributing factor material to the determination of disability, and therefore, the ALJ concluded that Clemons had not been disabled within the meaning of the Act.

Clemons alleges that the ALJ's decision is not supported by substantial evidence. Clemons first argues that the ALJ erred in her rejection of the opinion of treating physician Dr. Govani. Dr. Govani opined that Clemons was unable to work. Clemons contends that the ALJ failed to adequately explain why she did not give Dr. Govani's opinion controlling weight. Clemons further asserts that the ALJ should have re-contacted Dr. Govani to obtain factual and medical findings to support his opinion.

The ALJ discussed Dr. Govani's opinion as follows:

> In June 2006, Dr. Govani concluded that the claimant was unable to work due to a recent hospitalization and uncontrolled diabetes (EX 1F at 214). Six months later, he concluded the claimant was unable to work due to multiple medical conditions (EX A). Finally, in August 2007, Dr. Govani concluded that the claimant was unable to work due to low back pain and diabetes mellitus (EX C at 42; EX D). However, he notes no specific restrictions or limitations. In addition, a statement by a medical source that the claimant is "disabled" or "unable to work" does not mean the claimant will be determined to be disabled as that term is defined in the Act. This is a determination reserved to the Commissioner (20 CFR 404.1527(e)(1) and 416.927(e)(1); SSR 96-2p; SSR 96-5p). More importantly, this conclusion finds no support in Dr. Giovani's [sic] records and is inconsistent with the medical and other evidence of record, which demonstrate the ability to perform the work reflected in his RFC. Accordingly, while giving the opinions of Dr. Govani appropriate consideration, I am unable to give them controlling weight (20 CFR 404.1527(d)(2) and 416.927(d)(2); SSR 96-2p). Further the limitations associated with the conditions to which he refers - diabetes and low back pain - have been included in the RFC above.

(R. at 33).

"A treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be

unreliable if the doctor is sympathetic with the patient and thus too quickly find[s] disability." *Id.* (internal quotation omitted). Accordingly, if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Id.* "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v.Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (clarifying "treating physician rule" and noting that it can be proper to give opinion of non-examining physician greater weight than that of treating physician).

In this case, the ALJ discussed the report of treating physician Dr. Govani and concluded that his opinion provided no specific restrictions or limitations, his opinion that Clemons could not work was not adequately supported by Dr. Govani's own records, and it was inconsistent with the medical and other evidence of record. (R. at 33). The ALJ also noted that a statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the claimant will be determined to be disabled as that term is defined in the Act, because the ultimate determination as to disability is reserved to the Commissioner. *Id.* The ALJ stated that she gave Dr. Govani's opinions appropriate consideration, but did not determine that they warranted controlling weight. *Id.* She also recited that the limitations associated with diabetes and low back pain were included in her RFC assessment. *Id.*

Contrary to Clemons' assertion that the ALJ said that "[s]he could do anything [s]he wanted with regard to honoring Dr. Govani's medical opinion on ability to work as this 'determination is reserved to the Commissioner,'" the ALJ accurately stated the well-established rule that the ultimate determination as to a claimant's disability is reserved to the Commissioner and that a treating physician's statement that a claimant is disabled or unable to work is not conclusive. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). In addition, Clemons' assertion that the ALJ should have re-contacted the physician for additional factual and medical findings is unavailing. If the physician's opinion lacked support from his own progress notes and records, there would be no ambiguity or other basis on which the ALJ had a duty to contact the physician. In addressing the opinion of treating physician Dr. Govani, the ALJ provided explanations for her reasoning and her reasoning was supported by substantial evidence. There was no error in this regard.

Clemons' second argument is that the ALJ's reliance on the opinion of medical expert Dr. Thomas was erroneous because Dr. Thomas was not provided a copy of the entire record to review before rendering his opinion. Two pieces of evidence were omitted: the report of a consultative evaluation conducted by Nancy Ingwell, Ph.D. on July 24, 2006, and a "report of contact" dated January 1, 2007. (R. at 18-19). The Commissioner concedes that these two records were not included in the materials reviewed by Dr. Thomas. The Commissioner, however, contends that Clemons has failed to explain how these records would have changed the analysis of Dr. Thomas.

The report of contact dated January 11, 2007 (R. at 194), is simply a report from an employee of the Social Security Administration noting that Clemons reported that all of his medical treatment had been performed at the VA Hospital in Indianapolis. There is no information on that document that would have any bearing on Dr. Thomas' opinion. As far as the July 24, 2006, evaluation by Dr. Ingwell is concerned, the Commissioner is correct in pointing out that medical expert Dr. Thomas reviewed a psychological evaluation by Dr. Ingwell dated April 23, 2007. (R. at 2216, 628-34A). Dr. Ingwell's impressions on both reports were similar. On both reports, Dr. Ingwell assigned a GAF of 55, meaning "serious psychological symptoms," and a diagnosis of depressive disorder. (R. at 633, 652). Dr. Ingwell discussed Clemons' history of substance abuse in both reports. Clemons has not pointed out any particular information contained in the July 2006 report that would alter Dr. Thomas' opinion. Under these circumstances, it was not reversible error that Dr. Thomas was not provided a copy of these two documents.

Clemons' third argument is that the ALJ failed to make a function-by-function analysis of Clemons' mental functioning, in violation of SSR 96-8p. Clemons does not specify in what manner the ALJ's decision is deficient in this regard. The ALJ cited SSR 96-8p when she noted that a mental RFC assessment at steps four and five of the sequential evaluation process required a detailed assessment of various functions contained in paragraphs B and C of the mental disorders listings. (R. at 26). The ALJ stated that she had therefore translated the B and C criteria findings into work-related functions in her RFC assessment. *Id.*

The ALJ concluded that if Clemons stopped substance use, he would be capable of performing a range of unskilled, sedentary jobs which existed in significant numbers in the national economy. (R. at 35). She based this conclusion on her evaluation of the evidence of record and on the testimony of a medical expert and a vocational expert. *Id.* The ALJ reasoned that her RFC assessment was consistent with the assessment of a consulting examining physician Dr. Rhee and with the testimony of medical expert Dr. Thomas. (R. at 27-28). The ALJ evaluated Clemons' ability to perform such work-related functions such as his ability to understand, remember and carry out simple job instructions, to follow work rules, relate to coworkers, use judgment, deal with work stress, function independently, maintain attention and concentration, understand, remember and carry out detailed, but not complex job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, deal with the public, interact with supervisors, and understand, remember and carry out complex job instructions. (R. at 26-27). The ALJ discussed the lengthy record and reasonably weighed the various opinions and evidentiary materials. The ALJ also discussed the evidence as it related to each of the criteria required to make a proper evaluation of Clemons' credibility. (R. at 27-34). Clemons has not demonstrated that the ALJ violated any provision of SSR 96-8p or that the ALJ erred in her evaluation of the evidence associated with Clemons' mental impairments.

As noted, the court's role in this case is not to attempt a *de novo* determination of Clemons' eligibility for disability benefits, but to decide if the Commissioner's decision was supported by substantial evidence. The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [her] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Clemons' impairments and functional limitations, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Clemons' applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by reversible error. Under these circumstances, Clemons is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/10/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana